Ronald E. Coleman, J.
This is a motion for an order directing a new trial on the ground of newly discovered evidence. The original trial was had before the Honorable William G. Easton, then a Judge of this court, who is now serving as a Supreme Court Justice, and for that reason the motion was heard by us. An award was made to the claimants for their land appropriated by the State (Hewitt v. State of New York, 33 Misc 2d 868). By notice of appeal dated September 25, 1961, the State appealed to the Appellate Division, Fourth Judicial Department, from the judgment entered thereon. The appeal has not been argued and is still pending before the Appellate Division.
The newly discovered evidence consists of a letter dated August 3,1954 from Clarence R. Runals, Esq., an attorney, who had been retained by the Niagara Mohawk Power Corporation, to Earle J. Machold, President of the corporation. The letter related the steps taken by Mr. Runals to obtain extensions of existing options to purchase land in the Town of Lewiston for use in connection with a reservoir as part of a project planned by the corporation to develop the waters of the Niagara River for power purposes. In the letter under the heading “ Possible Options To Purchase Substantial Acreage ’ ’, Mr. Runals discussed claimants’ property consisting of approximately 103 acres, being the subject of the above numbered claims. While the Hewitts had initially demanded $150,000 for their property, he stated that after protracted negotiations their demands were reduced and that they offered to execute an option for the pur *636 chase of their property at a price of $67,500. No further steps were taken and no option was given by the Hewitts to the Niagara Mohawk Power Corporation.
In the course of an examination before trial of Benjamin N. Hewitt, one of the claimants, taken on December 9, 1960, he was asked the following questions and made the following answers:
“ Q. Now, since you have been the owner of this property, has it been offered for sale ? A. To my knowledge, no. ’ ’
“ Q. Never been placed in the hands of brokers? A. No.”
In the light of this examination of Mr. Hewitt, the trial counsel for the State made no further investigation of any attempt on the part of the owners of the property to make any disposition of it and the claimants’ theory that the property had long been held for subdivision development was not contested. On or about October 1, 1962, counsel was informed by an employee of the Power Authority that he had heard a rumor that sometime in 1953 or 1954 claimants had offered to grant an option to the Niagara Mohawk Power Corporation to acquire this property. On October 4, 1962 a subpoena duces tecum was served on the Niagara Mohawk Power Corporation and as a result the letter dated August 3,1954, written by Clarence R. Runals, Esq., was made available to the State (Affidavit attached to moving papers). The State now asks for a trial de novo, principally on the ground that the award made was excessive and that the newly discovered evidence of claimants’ offer to sell, requires a new trial in the interest of justice.
The property owned by the claimants was located in the Town of Lewiston with a means of access to Upper Mountain Road easterly of the intersection of that road with Military Road and was within the area of the reservoir as planned by the Niagara Mohawk. That corporation had acquired by deed several other properties in this area in 1956 and 1957 and the acreage as so acquired by it subsequently was deeded to the Power Authority (cf. Hewitt v. State of New York, 27 Misc 2d 930, affd. 11 A D 2d 1079). The Power Authority apparently had the co-operation of the Niagara Mohawk after it was finally determined in 1957 that the power project was to be a public development rather than a private one. Under these circumstances, we do not understand why the fact that the Hewitts had made an offer to sell their property to Niagara Mohawk in 1953 was not known or discovered by someone in the Power Authority before 1962. We believe that this fact could have been ascertained by the Power Authority prior to the trial of the claims and as such was evidence that was available for use upon the first trial. However, we have not based our determination herein on this fact alone.
*637 In our opinion the newly discovered evidence is- not of such a nature, nor is it so positive or convincing that it would in all probability produce a different result if a new trial were had. While it is quite possible that we would not have reached the same result had the claims originally been tried before us, it is not enough simply to show that a different conclusion might be reached on another trial. The different result must be fairly attributable to the new evidence. (Tarbell v. Finnigan, 55 App. Div. 629, 631.)
On the trial, four sales were used as comparables by the State and were admitted in evidence without objection, being State’s comparables Nos. 10, 11, 12 and 13, which were deeds to the Niagara Mohawk Power Corporation taken in accordance with options given in 1953 and 1954. The properties covered by these deeds were located in the proposed reservoir area as planned by Niagara Mohawk. Indeed, comparable No. 10 adjoined on the east the property owned by the Hewitts, comparables Nos. 11 and 12 were located on Moyer Road a distance of 800 to 1,000 feet easterly from the Hewitt property, comparable No. 13 was located at the intersection of Military and Upper Mountain Roads approximately 1,800 feet westerly from the Hewitt property and all consisted of acreage similar to claimants’ property.
On the trial, the State’s expert Hopkins admitted that the market value of these properties in the Spring of 1958 would be considerably higher than it was in 1954, claimants’ property being appropriated on March 25, 1958. While the offer of the claimants to sell their property in 1953 or 1954 certainly would be competent evidence on the question of the market value of the property, we do not consider the same in like manner as an admission against interest in respect to the value of their property when appropriated in 1958, as urged by the State, for the reason that it was remote from the time of the appropriation. It would have been entitled to the same consideration that was given to the four comparable sales hereinabove discussed. As to these sales, Judge Easton said: “ Because of the rapid rise in real property prices between the years 1950 and 1958 which was acknowledged by all appraisers, very little if any weight has been given to these comparables, because the options antedated the appropriation in this case by four or five years.” (Hewitt v. State of New York, 33 Misc 2d 868, 869-870, supra.) With this we agree. The evidence of the proposed offer made by the claimants in 1953 or 1954 would be considered together with these four comparables, as such it is cumulative, and would not be likely to change the results. Had we determined on the record *638 in the first instance that the fair market value of claimants’ property was as found by Judge Easton, the subsequent disclosure of the offer to sell would not affect our determination. The real question of whether or not, on the record, the award made is excessive as claimed by the State is a matter which is now before the Appellate Division and is not a proper one to be determined by us on this motion. The motion is denied.