Bernard Ryan, P. J.
This is written to accompany a formal decision in an appropriation case and to state the court’s position on certain questions raised during the course of the trial in the hope that thus it may be clarified. These questions relate both to the admissibility of evidence and to rules of law and to the measure of damages.
First. Both claimant and defendant availed themselves of section 16 of the Court of Claims Act and served notice that upon the trial it was proposed to offer evidence with respect to sales of certain real property said to be comparable to that owned by the claimant. The appropriation maps in this case were filed and served in November, 1955 and in January, 1956. The claimant’s notice listed sales running from March 9, 1953 to December 16, 1957. The court, over the objection of the Attorney-General, received testimony of each of these sales. When the claimant rested his case the Attorney-General moved to strike testimony of sales made subsequent to the date of appropriation, upon the authority of International Paper Co. v. United States (227 F. 2d 201 [1955]). In that case the court said at page 209:1 ‘ Whether the Court would have been justified in keeping out evidence of the sales merely because of their size, or whether he may have found other circumstances that prevented these tracts from being otherwise comparable, it was not error for him to exclude testimony as to them on the ground that they took place after the condemnation that is here in litigation. Sales cannot be said to be comparable if they are made under such circumstances as indicate that they may reflect an increment in value due to the government’s project. See Anderson vs. United States, 5 Cir., 179 F. 2d 281.”
Earlier in the same opinion the court had already said with respect to an allegation of error by the trial court in ‘ ‘ admitting in evidence proof of sales of land either too remote in point of time or not comparable in size ” that it certainly would not substitute its judgment for that of the trial court (p. 208). We denied the Attorney-General’s' motion and let the testimony stand. Without disrespect to the authorities cited we prefer to follow a rule of reason as to proximity in time. (1 Orgel, Valuation Under Eminent Domain [2d ed.], § 139 and cases cited.) We believe that a sale made within a reasonably brief time after the appropriation, as well as a sale made within a reasonably brief time prior to the date of appropriation, should be con *316 sidered by the court. In Hew York there is recent authority to support this belief. (Dormann v. State of New York, 4 AD 2d 979 [1956], motion for permission to appeal denied 5 A D 2d 904, further denied 4 N Y 2d 676.)
Second. The Attorney-General requests us to find as a conclusion of law herein as follows: “II. That benefits resulting to the remaining land by reason of the appropriation and of the use to which the appropriated parcel is put may be set off against any consequential damage to such remaining land. ’ ’ For this he cites Gilmore v. State of New York (208 Misc. 427 [1955]).
We recognize the rule. (Newman v. Metropolitan El. Ry. Co., 118 N. Y. 618, 624 [1890]; 2 Lewis, Eminent Domain [3d ed.], §§ 690, 693.) But we question its application in the manner herein sought by the Attorney-General. A witness called by him gave it as his opinion that because of the development of the Thruway in the area the value of the land abutting Camp Road had increased. The Attorney-General would have us adopt this expert’s opinion of the difference in valué as a finding of fact and offset the difference, not against the value of the acreage actually appropriated, to be sure, but against any consequential damages sustained by the remaining acreage.
There can be no doubt that consequential damage has resulted. There is impairment of access due to the raising of the grade to carry Camp Road over the Thruway traffic lanes. This impairment of access, while perhaps not conceded, has been established by oral and documentary proof and confirmed by the court’s view of the property as required by statute. (Court of Claims Act, § 12, subd. 4.) One of the parcels acquired by the State, Parcel 581, was a strip of land 120 feet deep running along the westerly boundary of Camp Road for a distance of 451.7 feet comprising 1.355 acres. This parcel was utilized in widening Camp Road and raising the grade thereof. The result, as testified to by an engineer, is that the elevation of Camp Road is now 5 feet higher than the northeasterly corner of claimant’s remaining 51 acres and 9 feet higher than the southeasterly corner of that tract. Although these measurements are not disputed by other testimony, the court’s inspection of the property cast doubt upon their accuracy. In the field the differences in elevation seemed much greater than those stated. But, accepting the figures as accurate, the physical situation resulting from the change of grade and the widening of Camp Road, which is a main artery for high-speed traffic, is such that it is an obvious deterrent to the development of the 51 acres, either for subdivision or for commercial purposes. Such purposes were the *317 highest and best use for the claimant’s lands prior to the appropriation. On this point all parties and all expert witnesses are in agreement. So much for the remaining acreage north of'the Thruway.
South of the Thruway right of way, where no frontage was taken from claimant, a deep drainage ditch extends for 370 feet of claimant’s approximate 400 feet of frontage on the west side of Camp Road. Thus, access to Camp Road, likewise elevated for the approach from the south to the bridge over .the Thruway, to and from the 23 acres left to claimant lying south of the Thruway, has been impaired.
This is not an instance wherein the utilization of the appropriated parcel has brought a physical benefit to claimant’s remaining lands. On the contrary they have been damaged and we so find. This issue has always been a question of fact. (Bohm v. Metropolitan El. Ry. Co., 129 N. Y. 576, 592 [1892]; Bookman v. New York El. R. R. Co., 147 N. Y. 298, 306 [1895]; Malcolm v. New York El. R. R. Co., 147 N. Y. 308, 313 [1895].)
There remains a third point for discussion. Hereinabove we have described Parcel 581. At the outset of the trial it was claimed on behalf of the claimant that the appropriation of this parcel, lying as it did between the westerly boundary of Camp Road as it previously existed and the remaining 51 acres of claimant’s land, had the effect of “ landlocking ” the 51 acres. In other words, it was asserted that the claimant had no legal access over Parcel 581 to the public highway as it is now constituted. This is not so. The parcel was utilized for widening the public highway and became a part thereof. From his abutting frontage along the new line, which is the westerly boundary of Parcel 581, claimant is entitled to enter upon Camp Road from any point. (Stevens v. State of New York, 190 Misc. 727 [1947].) As in that case, claimant Pauly’s access has not been effaced. But it has been impaired and we are awarding damages accordingly.